## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DIANA LOMORO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) CIVIL ACTION NO. 18-CV-3229-PBT |
| | ) |
| DAILY NEWS, L.P., TRONC, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## [PROPOSED] ORDER

**AND NOW**, this _____ day of _____, _____, upon consideration of Defendants

Daily News, L.P. and tronc, Inc.'s Motion to Dismiss, and any responses thereto, it is hereby

**ORDERED** that the Motion is **GRANTED** and that Plaintiff's Complaint is **DISMISSED**

**WITH PREJUDICE**.


BY THE COURT:


_____
PETRESE B. TUCKER
United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| DIANA LOMORO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | )   CIVIL ACTION NO. 18-CV-3229-PBT |
| | ) |
| DAILY NEWS, L.P., TRONC, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS DAILY NEWS, L.P. AND TRONC, INC.'S
## MOTION TO DISMISS THE COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), and for the reasons set forth in the accompanying Memorandum of Law, which is incorporated here as though fully set forth, Defendants Daily News, L.P. and tronc, Inc. respectfully move this Court to dismiss Plaintiff's Complaint with prejudice.


Dated: September 26, 2018

/s/ Eli Segal
Eli Segal (PA 60234)
Eric S. Merin (PA 320857)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
Phone: 215.981.4239
Fax: 215.981.4750
segale@pepperlaw.com
merine@pepperlaw.com

*Counsel for Defendants Daily News, L.P. and tronc, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| DIANA LOMORO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | )   CIVIL ACTION NO. 18-CV-3229-PBT |
| | ) |
| DAILY NEWS, L.P., TRONC, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS DAILY NEWS, L.P. AND
TRONC, INC.'S MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ............................................................................................. 1

II.     RELEVANT FACTUAL BACKGROUND ...................................................... 2

III.    ARGUMENT .................................................................................................... 5

        A.      The defamation count against the Daily News should be dismissed.
                (Count I.) .............................................................................................. 6

                1.      The defamation count against the Daily News fails under New
                        Jersey law. ................................................................................. 6

                        a.      Ms. LoMoro does not allege that the Daily News published
                                the article with actual malice—that is, with knowledge that
                                it was false or with reckless disregard of its truth or falsity. .......... 6

                        b.      The article did not state or imply that Ms. LoMoro was
                                involved in criminal activity. ........................................... 9

                2.      The defamation count against the Daily News fails under New
                        York law because the article did not state or imply that Ms.
                        LoMoro was involved in criminal activity and because Ms.
                        LoMoro has not made a rigorous showing that the Daily News
                        intended to imply that she was. ................................................ 10

        B.      The false light invasion of privacy count against the Daily News should be
                dismissed.  (Count III.) ........................................................................ 12

                1.      The false light invasion of privacy count against the Daily News
                        fails under New Jersey law for the same reasons as the defamation
                        count................................................................................... 12

                2.      The false light invasion of privacy count against the Daily News
                        fails under New York law because New York does not recognize
                        such a cause of action. ............................................................ 13

        C.      The count against the Daily News based on sections 50 and 51 of the New
                York Civil Rights Law should be dismissed.  (Count V.) ...................... 13

                1.      The count against the Daily News based on sections 50 and 51 of
                        the New York Civil Rights Law fails under New Jersey law
                        because a plaintiff cannot proceed on a New York statutory cause
                        of action if another state supplies the governing law............... 14

Page

2.      The count against the Daily News based on sections 50 and 51 of
        the New York Civil Rights Law fails under New York law because
        the article was about a matter of public interest, the photograph
        featuring Ms. LoMoro had a real relationship to the article, and the
        article was not an advertisement in disguise............................................ 14

D.      Ms. LoMoro's three counts against tronc should be dismissed for the same
        reasons as her three counts against the Daily News and because Ms.
        LoMoro does not allege that tronc published the article.  (Counts II, IV,
        VI.) ............................................................................................................ 16

IV.     CONCLUSION............................................................................................. 16

## I.     INTRODUCTION

In December 2017, on page 18, the New York *Daily News* reported on the government-ordered shuttering of Satin Dolls, the New Jersey strip club where "The Sopranos"—HBO's show about fictional mafia-boss Tony Soprano—frequently filmed.  This *Daily News* article explained that the state had closed down the club because the man running it in real life was a convicted racketeer and, therefore, was not permitted to have a liquor license.  Accompanying the article was a photograph of two women who worked at Satin Dolls, smiling and posing on either side of a "Sopranos" license plate and hat and a picture of James Gandolfini—the actor who played Tony Soprano.

One of the two women in the photograph is the Plaintiff, New Jersey resident Diana LoMoro.  She has sued the publisher of the *Daily News*, Defendant Daily News, L.P. ("the Daily News"), and its parent company, Defendant tronc, Inc., contending that the article—which never mentioned her by name or otherwise referred to her in any way—defamed her and painted her in a false light by falsely linking her to criminal conduct.  In addition, Ms. LoMoro maintains that publishing the photograph with her in it violated sections 50 and 51 of the New York Civil Rights Law, which generally provide a cause of action for the unauthorized use of a person's picture for advertising or trade purposes.

Ms. LoMoro's Complaint should be dismissed in its entirety under Rule 12(b)(6).  She fails to state a claim under either New Jersey law (which should govern, given that she lives in New Jersey and the events reported and depicted in the article took place there) or under New York law (which she appears to attempt to invoke, given that she has asserted New York statutory claims):

- ***First***, the defamation claim against the Daily News fails under New Jersey law because Ms. LoMoro does not and cannot allege that the Daily News published the article

with actual malice—that is, with knowledge that it was false or with reckless disregard of its truth or falsity—and because the article did not state or imply that Ms. LoMoro was involved in criminal activity.  Alternately, the claim fails under New York law because the article did not state or imply that Ms. LoMoro was involved in criminal activity and because she has not made the required rigorous showing that the Daily News intended to imply that she was.

- ***Second***, the false light invasion of privacy claim against the Daily News fails under New Jersey law for the same reasons as the defamation claim, and it fails under New York law because New York does not recognize such a cause of action.

- ***Third***, the claim against the Daily News based on sections 50 and 51 of the New York Civil Rights Law fails under New Jersey law because a plaintiff cannot proceed on a New York statutory cause of action if another state supplies the governing law.  It fails under New York law because it is well established that the use of a photograph to illustrate a newsworthy article is not a use for purposes of advertising or trade within the meaning of the statute.

- ***Fourth***, all of the claims against tronc fail for the same reasons as the claims against the Daily News and because Ms. LoMoro does not and cannot allege that tronc (as opposed to its subsidiary, the Daily News) published the article.

## II.    RELEVANT FACTUAL BACKGROUND

On December 19, 2017, the Daily News published the article at issue in this case on page 18 of the paper, under the headline "RACK WHACK:  Famed 'Sopranos' jiggle joint is

shuttered." Ex. A (Article).[1]  The article reported the following facts, none of which Ms.
LoMoro disputes:

- "The Sopranos" regularly filmed at Satin Dolls, the New Jersey strip club
that, in the show, was called "Bada Bing" and functioned as Tony Soprano's headquarters. *Id.*

- Memorials to James Gandolfini, the actor who played Tony Soprano, were
erected at Satin Dolls after Gandolfini's death in 2013. *Id.*

- Also in 2013, Anthony Cardinalle, who owned Satin Dolls, was indicted
for his involvement in a company controlled by the Genovese crime family and pleaded guilty to
racketeering conspiracy and conspiracy to commit extortion. *Id.*

- As a convicted racketeer, Cardinalle was not permitted to have a liquor
license. *Id.*

- According to New Jersey authorities, Cardinalle nonetheless continued to
run Satin Dolls, and "a large amount of cash flowing in and out of the business was not
accounted for."  In addition, in May of 2017, the Division of Alcoholic Beverages "charged the
club with prostitution and lewd activity." *Id.*

- Due to Cardinalle's continued involvement with Satin Dolls, the state
ordered the club to shut down. *Id.*

---

[1] Ms. LoMoro did not attach a full copy of the article to her Complaint.  But in
adjudicating a motion to dismiss, the Court may consider any documents, even if not attached to
the Complaint, that are "integral to or explicitly relied upon in the complaint." *Lum v. Bank of
Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004).  The article is both "integral to" and "explicitly relied
upon in" Ms. Lomoro's Complaint and thus may be considered.

• New Jersey Attorney General Christopher Porrino gave this statement regarding the state's decision to shutter the club:

> The Cardinalles may have wanted to keep the business in the family, but that's not how it works.  Their continued flouting of Alcoholic Beverage Control laws cannot and will not be tolerated. . . . Illegal activity was glorified at the 'Bada Bing' in the fictional world of Tony Soprano, but it has no place in modern-day New Jersey.  It's time to shut it down.

*Id.*

The article's text did not mention or refer to Ms. LoMoro at all.  A photograph accompanying the report featured her and another woman standing on either side of a "Sopranos" license plate and hat and a framed picture of Gandolfini (aka Tony Soprano).  From the surrounding context, it is apparent that Ms. LoMoro and the other woman—both smiling for the camera—were Satin Dolls workers at the time the photograph was taken and that the picture of Gandolfini was one of the memorials to the actor mentioned in the article.  The photograph's caption—which also did not mention Ms. LoMoro—was:  "Strip club Satin Dolls in Lodi, N.J., which served as Tony Soprano's headquarters Bada Bing on HBO show, was shuttered because of its ties to real-life wiseguy."

Because Ms. LoMoro was unhappy that the newspaper published the photograph with her in it, her counsel wrote to the Daily News and its parent company, tronc, on January 2, 2018, demanding a retraction and an unspecified monetary payment.  Ex. B (Rosen Letter).[2]  The letter made no mention of any defamation claim, asserting only that the Daily News' publication of the photograph violated sections 50 and 51 of the New York Civil Rights Law.  *Id.*  The letter

---

[2] While this letter and the Daily News' response to it are not attached to the Complaint, they are discussed therein, Compl. at ¶ 9, and therefore, like the article, are "integral to" and "explicitly relied upon" in the Complaint and may be considered by the Court.  *Lum*, 361 F.3d at 222.

acknowledged that Ms. LoMoro had previously been affiliated with Satin Dolls. *Id.* at 1 (stating that Ms. LoMoro "has had no affiliation with Satin Dolls in years."). The Daily News responded by explaining that the publication of the photograph in no way violated sections 50 and 51 because those sections prohibit only the unauthorized use of a person's likeness for advertising or trade purposes, and the use of a photograph by a newspaper in connection with a newsworthy article is not an advertising or trade use as a matter of law. Ex. C (Leish Letter).

The Daily News heard nothing further from Ms. LoMoro until she commenced this litigation on July 30, 2018. In her six-count Complaint, she asserts separate claims against the Daily News and tronc for defamation (Counts I and II), false light invasion of privacy (Counts III and IV), and violation of sections 50 and 51 of the New York Civil Rights Law (Counts V and VI). The Complaint should be dismissed in its entirety.

## III.    ARGUMENT

Given that she asserts claims under the *New York* Civil Rights Law, Ms. LoMoro appears to be attempting to proceed in this case under New York law. But Pennsylvania's choice-of-law principles—which apply here because this is a diversity case, *White v. Sunoco, Inc.*, 870 F.3d 257, 263 (3d Cir. 2017)—dictate that New Jersey law should govern to the extent that New Jersey and New York law materially conflict. That is because Ms. LoMoro lives in New Jersey, Compl. at ¶ 4, and under Pennsylvania choice-of-law principles, the law of the state of the plaintiff's domicile generally controls in defamation cases. *See, e.g.*, *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 471-72 (E.D. Pa. 2010) (applying law of plaintiff's domicile to defamation claim and collecting cases that did the same); *Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 267 F. Supp. 2d 425, 431-33 (E.D. Pa. 2003) (applying law of plaintiff's domicile to defamation claim); *Wilson v. Slatalla*, 970 F. Supp. 405, 414-15 (E.D. Pa. 1997) (same). Moreover, all of

the events reported and depicted in the article took place in New Jersey, not New York.  *See* Ex. A (Article).

Nonetheless, in an abundance of caution, the Defendants demonstrate below that dismissal of all of Ms. LoMoro's claims would be warranted under either New Jersey law or New York law, making it unnecessary for the Court to engage in a full choice-of-law analysis.

**A.      The defamation count against the Daily News should be dismissed.  (Count I.)**

In her defamation count against the Daily News, Ms. LoMoro alleges that the article "portrayed [her] as being linked to criminality including racketeering and prostitution, which is false."  Compl. at ¶ 14.  She fails to state a claim under New Jersey or New York law.

**1.      The defamation count against the Daily News fails under New Jersey law.**

**a.      Ms. LoMoro does not allege that the Daily News published the article with actual malice—that is, with knowledge that it was false or with reckless disregard of its truth or falsity.**

The Daily News article was about a matter of public concern—specifically, a strip club featured on a popular fictional television show about the mafia being shut down by the government due to the club's real-life connections to organized crime.  Therefore, New Jersey defamation law requires Ms. LoMoro to plead and prove that the Daily News published the article with "actual malice"—or, in other words, that it "knew the [article] to be false or acted in reckless disregard of its truth or falsity."  *Durando v. Nutley Sun*, 37 A.3d 449, 458 (N.J. 2012); *see also id.* ("Today, in New Jersey the actual-malice standard protects both media and non-media defendants who make statements involving matters of public concern, regardless of whether the targets of the statements are public figures or private persons.").  Because actual malice is a necessary element of her defamation claim, dismissal is warranted unless Ms. LoMoro "pleads factual content that allows the court to draft the reasonable inference" that the

-6-

Daily News acted with the degree of fault that actual malice entails.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Moriarty v. Classic Auto Group, Inc.*, No. 13-5222, 2014 U.S. Dist. LEXIS 28535, at *8 (D.N.J. Mar. 5, 2014) (citing *Iqbal* and stating that "[a]t the pleading stage, a plaintiff alleging defamation with actual malice must plead facts from which malice might reasonably be inferred").

The actual malice standard that Ms. LoMoro must satisfy to prevail under New Jersey law is "subjective, not objective, and involves analyzing the thought processes of the particular defendant," rather than what a "reasonably prudent" person would have thought or would have done.  *Durando*, 37 A.3d at 459.  Indeed, to satisfy even the "reckless disregard" prong of the standard, she must show that, before publishing the article, the Daily News had a "high degree of awareness of its probable falsity" or "entertained serious doubts as to [its] truth." *Id.* (internal quotation marks and brackets omitted).  What the Daily News "*should* have known" or "*should* have doubted" is irrelevant.  *Id.* (emphasis in *Durando*).  In the words of the New Jersey Supreme Court, speech on matters of public concern receives such extraordinary protection "because of the significant societal benefit in robust and unrestrained debate on matters of public interest and because even the fear of having to defend against a defamation suit may make some too timid to venture into discussions where speech may be prone to error." *Id.* at 457 (internal quotation marks and brackets omitted).  Moreover, to the extent that Ms. LoMoro seeks to recover based on an alleged implication, rather than on the article's express meaning, the subjective "actual malice" standard requires her to satisfy a separate "communicative intent" element, too:  she must show that the Daily News knew that the publication would convey the alleged implication.  *Kendall v. Daily News Publ'g Co.*, 716 F.3d 82, 92-93 (3d Cir. 2013).

Given how important the actual malice standard is for ensuring free speech and how difficult its high bar is to overcome, courts in this Circuit have repeatedly granted pre-discovery motions to dismiss claims for failure to adequately plead actual malice.  *See, e.g.*, *Lee v. TMZ Productions, Inc.*, 710 Fed. App'x 551, 559-60 (3d Cir. 2017) (dismissing defamation claim for insufficient allegations of actual malice and stating that "the standard imposes a heavy burden"); *Moriarty*, 2014 U.S. Dist. LEXIS 28535, at *9-13 (dismissing defamation claim for insufficient allegations of actual malice); *Earley v. Gatehouse Media Pa. Holdings, Inc.*, 12-1886, 2013 U.S. Dist. LEXIS 140631, at *15-27 (M.D. Pa. Sept. 30, 2013) (dismissing defamation claim for insufficient allegations of actual malice and recognizing that, "[i]n the wake of *Iqbal* and *Twombly*, adequately pleading actual malice is an onerous task"); *Lipsky v. Conn. Gen. Life Ins. Co.*, No. 13-105, 2013 U.S. Dist. LEXIS 136380, at *8-10 (D.N.J. Sept. 24, 2013) (dismissing defamation claim for insufficient allegations of actual malice and explaining that "[s]imply stating that the statement was made with malice without additional facts that support the notion that Defendant knew the statement was false or had a reckless disregard for the truth is insufficient to survive a motion to dismiss").

The Court should follow suit here.  For Ms. LoMoro, like the plaintiffs in all of the dismissed defamation claims discussed above, fails to plead "factual content that allows the court to draw the reasonable inference" that the Daily News published the article with actual malice.  *Iqbal*, 556 U.S. at 678.  Indeed, nowhere in her Complaint does Ms. LoMoro even reference the actual malice standard.  Therefore, she fails to state a claim for defamation under New Jersey law.

**b.    The article did not state or imply that Ms. LoMoro was involved in criminal activity.**

The Complaint also should be dismissed under New Jersey law for the independent reason that the article did not state or imply anything defamatory about Ms. LoMoro.  Under New Jersey law, a "threshold issue in any defamation case is whether the statement at issue is reasonably susceptible of a defamatory meaning."  *Romaine v. Kallinger*, 537 A.2d 284, 287 (N.J. 1988).  Crucially, "[t]his question is one to be decided first by the court."  *Id.*  And "[i]n making this determination, the court must evaluate the language in question according to the fair and natural meaning which will be given it by reasonable persons of ordinary intelligence."  *Id.* (internal quotation marks omitted).  Therefore, if a publication cannot be reasonably understood to mean what a defamation plaintiff contends, New Jersey law requires dismissal.

For example, in *Romaine*, the plaintiff claimed that a book about a notorious criminal "accuse[d] her of having engaged in criminal conduct or having associated with criminals relating to drugs."  *Id.* at 288.  The plaintiff based her claim on the following sentence in the book:  "Besides, Maria was eager for news from Randi [the plaintiff] about a junkie they both knew who was doing time in prison."  *Id.* at 287.  The New Jersey Supreme Court affirmed the dismissal of the plaintiff's defamation claim, holding that "only the most contorted reading of the offending language could lead to the conclusion that it accuses plaintiff of illegal drug use or criminal associations."  *Id.* at 288.  In other words, the court explained, "[a] reasonable and fair understanding of the statement simply does not yield an interpretation that the plaintiff was or had been in illegal possession of drugs or otherwise engaging in any illegal drug-related activity."  *Id.* at 289.  The court stressed that, "[a]t most, the sentence can be read to imply that

plaintiff knew a junkie," and "[a]bsent exceptional circumstances, the mere allegation that plaintiff knows a criminal is not defamatory as a matter of law." *Id.*

Here, like in *Romaine*, Ms. LoMoro's defamation claim fails under New Jersey law because the Daily News article was not "reasonably susceptible" of the meaning that she ascribes to it. *Id.* at 288. While Ms. LoMoro alleges that the article "portrayed [her] as being linked to criminality including racketeering and prostitution," Compl. at ¶ 14, it did no such thing—explicitly or implicitly. In fact, the article did not mention or refer to her at all. And the photograph about which she complains did not suggest that either of the two unnamed women featured in it had been involved in any criminal activity. Rather, the photograph was self-evidently published to illustrate the article's repeated references to Satin Dolls' connection to "The Sopranos." As for the "racketeering" discussed in the article, the article itself made clear that *Cardinalle* was the culprit. In addition, while the twelfth paragraph stated that "[i]n May, the division charged the club with prostitution and lewd activity," the article did not state that any individual—much less Ms. LoMoro herself—was charged.

> **2.    The defamation count against the Daily News fails under New York law because the article did not state or imply that Ms. LoMoro was involved in criminal activity and because Ms. LoMoro has not made a rigorous showing that the Daily News intended to imply that she was.**

Under New York law, just like under New Jersey law, a critical judicial gatekeeping function in a defamation case is "to determine whether [the] publication is susceptible of the defamatory meaning ascribed to it" by the plaintiff. *Suozzi v. Parente*, 202 A.D.2d 94, 100-01 (N.Y. App. Div. 1994). If the publication is "not reasonably susceptible" of that meaning, it is "not actionable and cannot be made so by a strained or artificial construction." *Dillon v. City of New York*, 261 A.D.2d 34, 38 (N.Y. App. Div. 1999). Therefore, when a publication does not state what a defamation plaintiff claims, dismissal is appropriate. *See, e.g.,*

*Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 34-35 (N.Y. App. Div. 2014) (affirming dismissal of express defamation claim where article did not state, as plaintiffs alleged, that corporate plaintiff was connected to another company's illegal activity).

In addition, under New York law, "a publisher is not liable for a defamatory innuendo unless it intended or endorsed that inference." *Chaiken v. VV Publ'g Corp.*, 907 F. Supp. 689, 698 (S.D.N.Y. 1995), *aff'd*, 119 F.3d 1018 (2d Cir. 1997). Accordingly, where, as here, a defamation plaintiff bases her claim on an allegedly false implication—as opposed to an express statement—New York law requires her to clear an even higher hurdle to survive a motion to dismiss. For such a plaintiff "must make a rigorous showing that the language of the communication as a whole can be reasonably read *both* to impart [the asserted] defamatory inference *and* to affirmatively suggest that the author intended or endorsed that inference." *Goldman v. Barrett*, No. 15-9223, 2016 U.S. Dist. LEXIS 145786, at *10 (S.D.N.Y. Aug. 24, 2016) (emphasis added); *see also Wilson v. New York*, No. 15-23, 2018 U.S. Dist. LEXIS 49609, at *15-17 (E.D.N.Y. Mar. 26, 2018) (dismissing defamation by implication claim for failure to make such a "rigorous showing"); *Tannerite Sports, LLC v. NBCUniversal Media, LLC*, 135 F. Supp. 3d 219, 232, 235-26 (S.D.N.Y. 2015) (same); *Stepanov*, 120 A.D.3d at 35-40 (same).

As discussed in the New Jersey law analysis at page 10 above, the Daily News article is not "reasonably susceptible" of the meaning that Ms. LoMoro ascribes to it, as the article did not explicitly or implicitly convey to readers that *Ms. LoMoro* was involved in any criminal activity. *Dillon*, 261 A.D.2d at 38. Moreover, to the extent that her claim is for defamation by implication, Ms. LoMoro has not made a "rigorous showing"—or, indeed, any showing at all—that the publication "can be reasonably read *both* to imply that she was involved in criminal activity *and* "to affirmatively suggest" that the Daily News "intended or

endorsed" such an implication.  *See Goldman*, 2016 U.S. Dist. LEXIS 145786, at *10.  Ms.

LoMoro's defamation claim against the Daily News therefore fails under New York law, too.[3]

> **B.     The false light invasion of privacy count against the Daily News should be dismissed.  (Count III.)**

In her false light invasion of privacy count against the Daily News, as in her

defamation count, LoMoro alleges that the article "portrayed [her] as being linked to criminality

including racketeering and prostitution, which is false."  Compl. at ¶ 33.  She again fails to state

a claim under New Jersey or New York law.

> **1.     The false light invasion of privacy count against the Daily News fails under New Jersey law for the same reasons as the defamation count.**

Ms. LoMoro's false light claim against the Daily News fails under New Jersey

law for the same two independent reasons that her defamation claim against the Daily News fails

under New Jersey law:  (1) she does not allege that the Daily News published the article with

actual malice and (2) the article did not state or imply that the she was involved in criminal

activity.  *See Durando*, 37 A.2d at 458 (explaining that actual malice is an element of any false

light claim); *Romaine*, 537 A.2d at 295 (explaining that, for false light claims, "[a]s with

defamation claims, it is for the court first to determine whether the criticized matter is capable of

the meaning assigned to it by plaintiff").

---

[3] New York law, unlike New Jersey law, does not require a private figure defamation plaintiff to establish actual malice when suing over an article about a matter of public concern. But New York law does require such a plaintiff to plead and eventually prove that the publisher "acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinary followed by responsible parties."  *Chapadeau v. Utica Observer-Dispatch*, 341 N.E.2d 569, 571 (N.Y. 1975).  Here, Ms. LoMoro has not alleged that the article was published in a grossly irresponsible manner.  Nor has she pleaded any other facts that could support such an allegation.  Accordingly, her defamation claim against the Daily News fails under New York law for this reason as well.  *See, e.g., Carlucci v. Poughkeepsie Newspapers, Inc.*, 88 A.D.2d 608, 609 (N.Y. App. Div. 1982) (ordering dismissal of plaintiff's complaint for failure to show gross irresponsibility), *aff'd on other grounds*, 57 N.Y.2d 883 (N.Y.1982).

2.      **The false light invasion of privacy count against the Daily News fails under New York law because New York does not recognize such a cause of action.**

Under New York law, there is no such thing as a cause of action for false light invasion of privacy—or for any other common law privacy tort, either. *See Messenger v. Gruner + Jahr Printing & Publ'g*, 727 N.E.2d 549, 552 (N.Y. 2000) (stating, as to false light, that "New York does not recognize such a common-law tort"); *Kane v. Orange County Publications*, 232 A.D.2d 526, 528 (N.Y. App. Div. 1996) (stating that false light cause of action "is not cognizable in this State"). The New York Court of Appeals has made clear that the only invasion of privacy claim that the state recognizes is that which is codified in sections 50 and 51 of the New York Civil Rights Law, the basis of entirely separate counts in Ms. LoMoro's Complaint:

> At least three other "privacy" torts have been recognized elsewhere: unreasonable publicity given to private life (Restatement [Second] of Torts § 652D); unreasonable intrusion upon seclusion (*id.*, § 652B); and *publicity that unreasonably places another in a false light* (*id.*, § 652E). While the courts of other jurisdictions have adopted some or all of these torts, in this State the right to privacy is governed by sections 50 and 51 of the Civil Rights Law; *we have no common law of privacy*.

*Howell v. N.Y. Post Co.*, 612 N.E. 2d 699, 703 (N.Y. 1993) (emphasis added) (some citations omitted). Therefore, if New York law applies, Ms. LoMoro's false light claim against the Daily News necessarily fails.

C.      **The count against the Daily News based on sections 50 and 51 of the New York Civil Rights Law should be dismissed. (Count V.)**

Ms. LoMoro claims that the Daily News violated sections 50 and 51 of the New York Civil Rights Law by failing to obtain her "written consent as a precursor for publishing her picture." Compl. at ¶ 40. Once more, she fails to state a claim under New Jersey or New York law.

**1.      The count against the Daily News based on sections 50 and 51 of the
New York Civil Rights Law fails under New Jersey law because a
plaintiff cannot proceed on a New York statutory cause of action if
another state supplies the governing law.**

Where, as here, a cause of action is explicitly based on a New York statute, it is

necessarily unavailable if a state other than New York supplies the governing law.  Therefore, if

New Jersey law governs this case, Ms. LoMoro's count against the Daily News based on

sections 50 and 51 of the New York Civil Rights Law must be dismissed.  *See, e.g.*, *Cibenko v.*

*Worth Publishers, Inc.*, 510 F. Supp. 761, 766 (D.N.J. 1981) (dismissing claim under sections 50

and 51 and explaining that "Plaintiff's claim under the New York statute is untenable

because . . . New Jersey law governs this action").

**2.      The count against the Daily News based on sections 50 and 51 of the
New York Civil Rights Law fails under New York law because the
article was about a matter of public interest, the photograph featuring
Ms. LoMoro had a real relationship to the article, and the article was
not an advertisement in disguise.**

Sections 50 and 51 of the New York Civil Rights Law generally provide a cause

of action for the use of a person's picture, without written consent, "for advertising purposes or

for the purposes of trade."  But "these sections do not apply to reports of newsworthy events or

matters of public interest."  *Messenger*, 727 N.E.2d at 552.  For "a newsworthy article is not

deemed produced for the purposes of advertising or trade" and to allow liability in such

situations would jeopardize "constitutional values in the area of free speech."  *Id.*  Therefore,

"[c]onsistent with the statutory—and constitutional—value of uninhibited discussion of

newsworthy topics, [the New York Court of Appeals] has time and again held that, *where a*

*plaintiff's picture is used to illustrate an article on a matter of public interest, there can be no*

*liability under sections 50 and 51 unless the picture has no real relationship to the article or the*

*article is an advertisement in disguise*."  *Id.* at 553 (emphasis added).  Moreover, that court

"ha[s] been reluctant to intrude upon reasonable editorial judgments in determining whether there is a real relationship between an article and photograph." *Howell*, 612 N.E.2d at 704.

Applying these principles, the New York Court of Appeals has repeatedly ordered the dismissal of claims under sections 50 and 51 that, like Ms. LoMoro's, are based on photographs used to illustrate news reporting. *See, e.g.*, *Howell*, 612 N.E.2d at 704 (photograph of psychiatric patient used to illustrate article about another psychiatric patient with whom she was walking); *Arrington v. N.Y. Times Co.*, 434 N.E.2d 1319, 1322-23 (N.Y. 1982) (photograph of well-dressed African American man walking along New York City street used to illustrate article called "The Black Middle Class: Making It"); *Finger v. Omni Publications Int'l,* 566 N.E.2d 141, 143-45 (N.Y. 1990) (photograph of large family used to illustrate article on fertility issues).

This Court should likewise dismiss Ms. LoMoro's claim here, even if New York law applies. First, the Daily News used the photograph featuring Ms. LoMoro to illustrate an article about a "matter of public interest"— a strip club featured on a popular fictional television show about the mafia being shut down by the government due to the club's real-life connections to organized crime. *Messenger*, 727 N.E.2d at 553. Second, there was a "real relationship" between the photograph and the article. *Id.* After all, Satin Dolls and its connection to "The Sopranos" was at the heart of the article, and the photograph featured two Satin Dolls workers— one of them wearing a "Bada Bing" shirt—alongside a memorial to the man who played Tony Soprano on the show. Finally, the article, on page 18 of the paper, was not an "advertisement in disguise." *Id.*

D.   **Ms. LoMoro's three counts against tronc should be dismissed for the same reasons as her three counts against the Daily News and because Ms. LoMoro does not allege that tronc published the article.  (Counts II, IV, VI.)**

For each of her three counts against the Daily News, Compl. at Counts I, III, V, Ms. LoMoro asserts a companion count against tronc, Compl. at Counts II, IV, VI.  The counts against tronc fail for all of the same reasons as the counts against the Daily News.  They also fail because Ms. LoMoro does not allege that tronc published the article at issue—or did anything else in connection with the article's publication, for that matter.  Instead, she asserts that the mere fact that the Daily News is tronc's subsidiary makes tronc liable for the Daily News' conduct in publishing the article.  *See* Compl. at ¶¶ 23, 36.  Ms. LoMoro is wrong as a matter of clearly established law.  That is because "[i]t a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries."  *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal citation and quotation marks omitted); *see also id.* ("Neither does the mere fact that there exists a parent-subsidiary relationship between two corporations make the one liable for the torts of its affiliate.").  Ms. LoMoro presents no facts and no legal theory that would justify holding tronc responsible for the Daily News' actions, and the claims against tronc therefore must be dismissed.

## IV.   CONCLUSION

For all of these reasons,  the Daily News and tronc request that the Court dismiss Ms. LoMoro's Complaint under Rule 12(b)(6) for failure to state a claim.  Further, because it would be impossible for Ms. LoMoro to correct all of the dispositive flaws identified above as to any of her counts, the dismissal should be with prejudice.

Dated: September 26, 2018

Respectfully,

/s/ Eli Segal
Eli Segal (PA 60234)
Eric S. Merin (PA 320857)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
Phone: 215.981.4239
Fax: 215.981.4750
segale@pepperlaw.com
merine@pepperlaw.com

*Counsel for Defendants Daily News, L.P. and tronc, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 26, 2018 a true and correct copy of the foregoing was served via ECF upon all counsel of record.


/s/ Eric S. Merin_____
Eric S. Merin