## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DIANA LOMORO,                                      :
                                                   :
                              Plaintiff,           :
                                                   :
                v.                                 :    CIVIL ACTION NO. 18-CV-3229-PBT
                                                   :
DAILY NEWS, L.P.,                                  :
                                                   :
                              Defendant.           :

## [PROPOSED] ORDER

      AND NOW, this _____ day of _____, 2019, upon consideration of Defendant

Daily News, L.P.'s Motion to Dismiss Amended Complaint, it is hereby ORDERED that the

Motion is GRANTED and that the Amended Complaint is dismissed with prejudice.


                BY THE COURT:


                _____

                PETRESE B. TUCKER
                United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DIANA LOMORO,                              :
                                          :
          Plaintiff,                    :
                                          :
       v.                               :   CIVIL ACTION NO. 18-CV-3229-PBT
                                          :
DAILY NEWS, L.P.,                          :
                                          :
          Defendant.                    :

## DEFENDANT DAILY NEWS, L.P.'S MOTION TO DISMISS AMENDED COMPLAINT

      Pursuant to Federal Rule of Civil Procedure 12(b)(6), and for the reasons set forth in the accompanying Memorandum of Law, which is incorporated here as though fully set forth, Defendant Daily News, L.P. moves to dismiss Plaintiff's Amended Complaint with prejudice.

      Respectfully submitted,

Dated: December 21, 2018          /s/ Eli Segal
                       Eli Segal (PA 60234)
                       PEPPER HAMILTON LLP
                       3000 Two Logan Square
                       Eighteenth & Arch Streets
                       Philadelphia, PA  19103-2799
                       Phone: 215.981.4239
                       Fax: 215.981.4750
                       segale@pepperlaw.com
                       *Counsel for Defendant Daily News, L.P.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DIANA LOMORO, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 18-CV-3229-PBT |
| | : | |
| DAILY NEWS, L.P., | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANT DAILY NEWS, L.P.'S MOTION TO DISMISS AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................. 1

II.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............................... 2

III. ARGUMENT ....................................................................................................... 5

    A.   Ms. LoMoro's defamation claim should be dismissed with respect to the
        Criminality Allegation. ....................................................................................... 5

        1.   The article cannot be reasonably construed to state or imply that
            Ms. LoMoro was involved in criminal activity. ........................................ 6

        2.   Ms. LoMoro does not plausibly allege that the Daily News linked
            her to criminal conduct with actual malice—that is, with
            knowledge of falsity or with reckless disregard for the truth. .................... 7

    B.   Ms. LoMoro's defamation claim should be dismissed with respect to the
        Unflattering Photograph Allegation........................................................................ 11

        1.   Ms. LoMoro does not plausibly allege that the published
            photograph was materially false. ............................................................... 12

        2.   Ms. LoMoro does not plausibly allege that the Daily News
            published the photograph with actual malice........................................... 13

    C.   Ms. LoMoro's false light invasion of privacy claim should be dismissed
        for the same reasons as her defamation claim. .................................................... 14

IV.  CONCLUSION.................................................................................................... 15

## I.       INTRODUCTION

In December 2017, the New York *Daily News* reported on the government-ordered shuttering of Satin Dolls, the New Jersey strip club where "The Sopranos"—HBO's show about fictional mafia-boss Tony Soprano—frequently filmed.  This *Daily News* article described the club's connection to "The Sopranos" and explained that the state had closed down the club because the man running it in real life was a convicted racketeer and, therefore, was not permitted to have a liquor license.  Accompanying the article was a photograph of two women who worked at Satin Dolls, smiling and posing on either side of a "Sopranos" license plate and hat and a picture of James Gandolfini—the actor who played Tony Soprano.

One of the two women in the photograph was the Plaintiff, New Jersey resident Diane LoMoro.  She has sued the publisher of the *Daily News*, Defendant Daily News, L.P. ("the Daily News"), contending that the article—which never mentioned her by name or otherwise referred to her in any way—defamed her and painted her in a false light in two different ways. First, Ms. Lomoro maintains that the article falsely linked her to criminal conduct, even though the article did not actually do so ("Criminality Allegation").  Second, Ms. LoMoro makes the ludicrous assertion that, for unexplained reasons, the Daily News intentionally "doctored" the photograph that it published, making her appear "fatter, larger, uglier, blotchier, discolored, disproportionate and grotesque" ("Unflattering Photograph Allegation").

Ms. LoMoro's Amended Complaint should be dismissed for failure to state a defamation or false light invasion of privacy claim as to either the Criminality Allegation or the Unflattering Photograph Allegation.  There are two independent reasons for dismissal as to the Criminality Allegation:  (1) the article cannot be reasonably construed to state or imply that Ms. LoMoro was involved in criminal activity; and (2) even if Ms. LoMoro's construction of the article were reasonable, she does not allege in any plausible manner that the Daily News linked

her to criminal conduct with actual malice—that is, with knowledge of falsity or with reckless disregard for the truth.  There also are two independent reasons for dismissal as to the absurd Unflattering Photograph Allegation:  (1) Ms. LoMoro does not plausibly allege that the published photograph was materially false; and (2) because her allegation of "doctoring" is entirely conclusory and therefore entitled to no deference on a motion to dismiss, Ms. LoMoro does not plausibly allege that the Daily News acted with actual malice in publishing the photograph that she thinks is unflattering.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On December 19, 2017, the Daily News published the article at issue in this case on page 18 of the paper, under the headline "RACK WHACK:  Famed 'Sopranos' jiggle joint is shuttered."  Ex. A (Article).[1]  The article reported the following facts, none of which Ms. LoMoro disputes:

- "The Sopranos" regularly filmed at Satin Dolls, the New Jersey strip club that, in the show, was called "Bada Bing" and functioned as Tony Soprano's headquarters.  *Id.*

- Memorials to James Gandolfini, the actor who played Tony Soprano, were erected at Satin Dolls after Gandolfini's death in 2013.  *Id.*

- Also in 2013, Anthony Cardinalle, who owned Satin Dolls, was indicted for his involvement in a company controlled by the Genovese crime family and pleaded guilty to racketeering conspiracy and conspiracy to commit extortion.  *Id.*

---

[1] Ms. LoMoro did not attach the article to her Amended Complaint.  But in adjudicating a motion to dismiss, the Court may consider any documents that are "integral to or explicitly relied upon in the complaint."  *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004).  The article is both "integral to" and "explicitly relied upon in" Ms. Lomoro's Amended Complaint and thus may be considered.

- As a convicted racketeer, Cardinalle was not permitted to have a liquor license. *Id.*

- According to New Jersey authorities, Cardinalle nonetheless continued to run Satin Dolls, and "a large amount of cash flowing in and out of the business was not accounted for." In addition, in May of 2017, the Division of Alcoholic Beverages "charged the club with prostitution and lewd activity." *Id.*

- Due to Cardinalle's continued involvement with Satin Dolls, the state ordered the club to shut down. *Id.*

- New Jersey Attorney General Christopher Porrino gave this statement regarding the state's decision to shutter the club:

> The Cardinalles may have wanted to keep the business in the family, but that's not how it works. Their continued flouting of Alcoholic Beverage Control laws cannot and will not be tolerated. . . . Illegal activity was glorified at the 'Bada Bing' in the fictional world of Tony Soprano, but it has no place in modern-day New Jersey. It's time to shut it down.

*Id.*

The article's text did not mention or refer to Ms. LoMoro at all. A photograph accompanying the report featured her and another unidentified woman standing on either side of a "Sopranos" license plate and hat and a framed picture of Gandolfini (aka Tony Soprano). From the surrounding context, it is apparent that Ms. LoMoro and the other woman—both smiling for the camera—were Satin Dolls workers at the time the photograph was taken and that the picture of Gandolfini was one of the memorials to the actor mentioned in the article. The photograph's caption—which also did not mention Ms. LoMoro—was: "Strip club Satin Dolls in Lodi, N.J., which served as Tony Soprano's headquarters Bada Bing on HBO show, was shuttered because of its ties to real-life wiseguy."

Because Ms. LoMoro was unhappy about the photograph that the newspaper chose to publish, her counsel wrote to the Daily News and its parent company, tronc, Inc. ("tronc"), on January 2, 2018, demanding a retraction and an unspecified monetary payment. Ex. B (Rosen Letter).[2]  The letter did not mention any defamation or false light invasion of privacy claim and did not claim that the photograph had been doctored, asserting only that the Daily News' publication of the photograph violated Ms. LoMoro's right of publicity under sections 50 and 51 of the New York Civil Rights Law.  *Id.*  The letter acknowledged that Ms. LoMoro had previously been affiliated with Satin Dolls.  *Id.* at 1 (stating that Ms. LoMoro "has had no affiliation with Satin Dolls in years.").  The Daily News responded by explaining that the publication of the photograph in no way violated sections 50 and 51.  Ex. C (Leish Letter).

The Daily News heard nothing further from Ms. LoMoro until she commenced this litigation on July 30, 2018.  In her original six-count Complaint, she asserted separate claims against the Daily News and tronc for defamation, false light invasion of privacy, and violation of sections 50 and 51 of the New York Civil Rights Law.  July 30, 2018 Compl. (Doc. 1).  The sole basis for her defamation and false light claims was the Criminality Allegation—that is, that the article falsely "portrayed [her] as being linked to criminality."  *Id.* at ¶ 14; *see also id.* ¶ 32 (alleging that the article "falsely link[ed] her to criminality").  Once again, she did not assert that the photograph had been doctored.

On September 26, 2018, the Daily News and tronc moved to dismiss all six counts in the Complaint.  Sept. 26, 2018 MTD (Doc. 8).  In her November 7, 2018 response, Ms. LoMoro dropped all of her claims against tronc, dropped her New York Civil Rights Law claim

---

[2]  While this letter and the Daily News' response to it are not attached to the Amended Complaint, they are discussed therein, Am. Compl. at ¶ 9, and therefore, like the article, are "integral to" and "explicitly relied upon in" the Amended Complaint and may be considered by the Court.  *Lum*, 361 F.3d at 222.

against the Daily News, and sought leave to filed an amended complaint against the Daily News for defamation and false light invasion of privacy.  Nov. 7, 2018 MTD Opp. (Doc. 11).  Given the stage of the case, the Daily News did not oppose Ms. LoMoro's request and, on November 29, 2018, she filed the Amended Complaint.  *See* Nov. 27, 2018 Stipulated Order (Doc. 13); Nov. 29, 2018 Am. Compl. (Doc. 14).  In her Amended Complaint, Ms. LoMoro includes not only the Criminality Allegation, *id.* ¶¶ at 14, 22, but also the Unflattering Photograph Allegation. Specifically, she complains that the Daily News published an "unflattering, edited photograph depicting" her and alleges (for the first time) that the Daily News "intentionally altered and doctored" the photograph "so as to disparage and diminish her appearance, inclusive but not limited to making her appear fatter, larger, uglier, blotchier, discolored, disproportionate and grotesque." *id.* at ¶¶ 8-9; *see also id.* at ¶ 19C ("Defendant intentionally altered the photograph containing plaintiff LoMORO's image, which was depicted in the subject article, inclusive but not limited to making her appear fatter, larger, uglier, blotchier, discolored, disproportionate and grotesque."); *id.* at ¶ 22 ("Defendant . . . publish[ed] her altered, doctored likeness and appearance for millions to see . . . .").

The Amended Complaint should be dismissed in its entirety for failure to state a claim for defamation or false light invasion of privacy—as to either the Criminality Allegation or the Unflattering Photograph Allegation.

## III.    ARGUMENT

### A.    Ms. LoMoro's defamation claim should be dismissed with respect to the Criminality Allegation.

In her Amended Complaint, Ms. LoMoro alleges that the Daily News falsely "portrayed [her] as being linked to criminality."  Am. Compl. at ¶ 14; *see also id.* at ¶ 22

(alleging that the article "falsely link[ed] her to criminality").  Her defamation claim should be dismissed as to this Criminality Allegation for two reasons.

> **1.     The article cannot be reasonably construed to state or imply that Ms. LoMoro was involved in criminal activity.**

The first reason why the Amended Complaint should be dismissed as to the Criminality Allegation is that the article did not state, and cannot be reasonably read as implying, that Ms. LoMoro was involved in criminal activity.  Under New Jersey law, a "threshold issue in any defamation case is whether the statement at issue is reasonably susceptible of a defamatory meaning." *Romaine v. Kallinger*, 537 A.2d 284, 287 (N.J. 1988).  Importantly, "[t]his question is one to be decided first by the court." *Id.*  And "[i]n making this determination, the court must evaluate the language in question according to the fair and natural meaning which will be given it by reasonable persons of ordinary intelligence." *Id.* (internal quotation marks omitted). Therefore, if a publication cannot be reasonably understood to mean what a defamation plaintiff contends, New Jersey law requires dismissal.

For example, in *Romaine*, the plaintiff claimed that a book about a notorious criminal "accuse[d] her of having engaged in criminal conduct or having associated with criminals relating to drugs." *Id.* at 288.  The plaintiff based her claim on the following sentence in the book:  "Besides, Maria was eager for news from Randi [the plaintiff] about a junkie they both knew who was doing time in prison." *Id.* at 287.  The New Jersey Supreme Court affirmed the dismissal of the plaintiff's defamation claim, holding that "only the most contorted reading of the offending language could lead to the conclusion that it accuses plaintiff of illegal drug use or criminal associations." *Id.* at 288.  In other words, the court explained, "[a] reasonable and fair understanding of the statement simply does not yield an interpretation that the plaintiff was or had been in illegal possession of drugs or otherwise engaging in any illegal drug-related

activity." *Id.* at 289.  The court stressed that, "[a]t most, the sentence can be read to imply that plaintiff knew a junkie," and "[a]bsent exceptional circumstances, the mere allegation that plaintiff knows a criminal is not defamatory as a matter of law." *Id.*

Here, like in *Romaine*, Ms. LoMoro's defamation claim fails with respect to the Criminality Allegation because the Daily News article was not "reasonably susceptible" of the meaning that she ascribes to it.  *Romaine*, 537 A.2d at 287.  While Ms. LoMoro alleges that the article "portrayed [her] as being linked to criminality including racketeering and prostitution," Am. Compl. at ¶ 14, it did no such thing—explicitly or implicitly.  In fact, the article did not mention or refer to her at all.  And the photograph about which she complains did not suggest that either of the two unnamed women featured in it had been involved in any criminal activity. Rather, the photograph was self-evidently published to illustrate the article's repeated references to Satin Dolls' connection to "The Sopranos."  As for the "racketeering" discussed in the article, the article itself made clear that *Cardinale* was the culprit.  In addition, while the twelfth paragraph stated that "[i]n May, the division charged the club with prostitution and lewd activity," the article did not state that any individual—much less Ms. LoMoro herself—was charged and did not identify any particular individual as having been involved in such activity.

Therefore, because the Criminality Allegation is based on a unreasonable construction of the article, dismissal is warranted with respect to it.

> **2.      Ms. LoMoro does not plausibly allege that the Daily News linked her to criminal conduct with actual malice—that is, with knowledge of falsity or with reckless disregard for the truth.**

Ms. LoMoro's defamation claim as to the Criminality Allegation also should be dismissed because, even if the Daily News did imply that she was involved in criminal conduct, Ms. LoMoro does not plausibly allege that the Daily News did so with actual malice.  The Daily News article was about a matter of public concern:  a strip club featured on a popular fictional

television show about the mafia being shut down by the government due to the club's real-life connections to organized crime. Therefore, New Jersey defamation law[3] requires Ms. LoMoro to plead and prove that the Daily News published the article with actual malice—or, in other words, that it "knew [the article] to be false or acted in reckless disregard of its truth or falsity." *Durando v. Nutley Sun*, 37 A.3d 449, 458 (N.J. 2012); *see also id.* ("Today, in New Jersey the actual-malice standard protects both media and non-media defendants who make statements involving matters of public concern, regardless of whether the targets of the statements are public figures or private persons."). Because actual malice is a necessary defamation element here, dismissal is warranted as to the Criminality Allegation unless Ms. LoMoro "pleads factual content that allows the court to draw the reasonable inference" that the Daily News acted with the degree of fault that actual malice entails in allegedly linking her to criminality. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Moriarty v. Classic Auto Group, Inc.*, No. 13-5222, 2014 U.S. Dist. LEXIS 28535, at *8 (D.N.J. Mar. 5, 2014) (citing *Iqbal* and stating that "[a]t the pleading stage, a plaintiff alleging defamation with actual malice must plead facts from which malice might reasonably be inferred").

      The actual malice standard that Ms. LoMoro must satisfy is "subjective, not objective, and involves analyzing the thought processes of the particular defendant," rather than what a "reasonably prudent" person would have thought or would have done. *Durando*, 37 A.3d at 459. Indeed, to satisfy even the "reckless disregard" prong of the standard, she must show that, before publishing the article, the Daily News had a "high degree of awareness of its

---

[3] In its brief in support of its motion to dismiss the initial complaint, the Daily News explained why New Jersey substantive law governs Ms. LoMoro's claims. *See* D.N. MTD Br. at 505 (Doc. 8). In her opposition brief, Ms. LoMoro did not disagree, applying New Jersey law to her defamation and false light claims. *See* LoMoro MTD Opp. Br. at 5-7 (Doc. 11). Therefore, there is no need for a choice of law analysis here.

probable falsity" or "entertained serious doubts as to [its] truth." *Id.* (brackets omitted).  What the Daily News "*should* have known" or "*should* have doubted" is irrelevant.  *Id.* (emphasis in *Durando*).  In the words of the New Jersey Supreme Court, speech on matters of public concern receives such extraordinary protection "because of the significant societal benefit in robust and unrestrained debate on matters of public interest and because even the fear of having to defend against a defamation suit may make some too timid to venture into discussions where speech may be prone to error." *Id.* at 457 (internal quotation marks and brackets omitted).

Moreover, given that Ms. LoMoro seeks to recover based on an alleged implication of criminal conduct by her, rather than based on any express attribution of criminal conduct to her, the subjective "actual malice" standard requires her to satisfy a separate "communicative intent" element, too:  she must plead and prove that the Daily News knew that the publication would convey the alleged implication.  *Kendall v. Daily News. Publ'g Co.*, 716 F.3d 82, 92-93 (3d Cir. 2013).

Given how important the actual malice standard is for ensuring free speech and how difficult its high bar is to overcome, courts in this Circuit have repeatedly granted pre-discovery motions to dismiss claims for failure to adequately plead actual malice.  *See, e.g.*, *Lee v. TMZ Productions, Inc.*, 710 Fed. App'x 551, 559-60 (3d Cir. 2017) (dismissing defamation claim for insufficient allegations of actual malice and stating that "the standard imposes a heavy burden"); *Moriarty*, 2014 U.S. Dist. LEXIS 28535, at *9-13 (dismissing defamation claim for insufficient allegations of actual malice); *Earley v. Gatehouse Media Pa. Holdings, Inc.*, No. 12-1886, 2013 U.S. Dist. LEXIS 140631, at *15-27 (M.D. Pa. Sept. 30, 2013) (dismissing defamation claim for insufficient allegations of actual malice; recognizing that, "[i]n the wake of *Iqbal* and *Twombly*, adequately pleading actual malice is an onerous task;" and stating that, in

evaluating whether a plaintiff has met that "onerous" burden, "the court does not consider the plaintiff's conclusory allegations with regard to knowledge or recklessness"); *Lipsky v. Conn. Gen. Life Ins. Co.*, No. 13-105, 2013 U.S. Dist. LEXIS 136380, at *8-10 (D.N.J. Sept. 24, 2014) (dismissing defamation claim for insufficient allegations of actual malice and explaining that "[s]imply stating that the statement was made with malice without additional facts that support the notion that Defendant knew the statement was false or had a reckless disregard for the truth is insufficient to survive a motion to dismiss").

        The Court should follow suit here as to the Criminality Allegation.  For Ms. LoMoro, like the plaintiffs in all of the dismissed defamation claims discussed above, fails to plead "factual content that allows the court to draw the reasonable inference" that the Daily News linked her to criminal conduct with actual malice.  *Iqbal*, 556 U.S. at 678.  Far from it, with respect to the Criminality Allegation, Ms. LoMoro makes only the bare-bones assertion that the Daily News "published the subject article with actual malice" and that it "had actual knowledge of, and thereby acted intentionally or with reckless disregard as to the falsity of the publicized matter."  Am. Comp. at ¶¶ 19B, 22(b).  This is not enough to survive a motion to dismiss, as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Again, to meet her actual malice pleading burden, Ms. LoMoro needed to—but did not—allege facts that, if true, would show (1) that the Daily News knew that the article would imply that she was involved in criminal conduct, *Kendall*, 716 F.3d at 92-93; and (2) that the Daily News "knew [this implication of criminal conduct] to be false," had a "high degree of awareness of its probable falsity," or "entertained serious doubts as to [its] truth," *Durando*, 37 A.3d at 458-59 (brackets omitted).

Ms. LoMoro does assert that the Daily News "intentionally altered and doctored"—or, in other words, knowingly falsified—the photograph so as to make her appear "fatter, larger, uglier, blotchier, discolored, disproportionate and grotesque" and maintains that this alleged conduct amounts to actual malice.  Am. Comp. at ¶ 9.  But even if Ms. LoMoro's allegation of "doctoring" were well-pled—which it is not, *see* Unflattering Photograph Allegation discussion at pages 13-14 below—it would have nothing to do with whether the Daily News acted with actual malice for purposes of the Criminality Allegation, as opposed to for purposes of the Unflattering Photograph Allegation.  Put differently, even if the Daily News "doctored" the photograph as Ms. LoMoro alleges, it would in no way tend to show (1) that the Daily News knew that the article implied that Ms. LoMoro was involved in criminal conduct; or (2) that the Daily News knew that Ms. LoMoro was not involved in criminal conduct, had a high degree of awareness that she probably was not involved in criminal conduct, or entertained serious doubts as to whether she was involved in criminal conduct.  *See Kendall*, 716 F.3d at 92-93; *Durando*, 37 A.3d at 458-59.

Because Ms. LoMoro fails to plausibly plead actual malice as to the Criminality Allegation, she fails to state a claim for defamation based on it, even if the article could be reasonably construed as implying that she was involved in criminal conduct.

### B.      Ms. LoMoro's defamation claim should be dismissed with respect to the Unflattering Photograph Allegation.

Ms. LoMoro's Unflattering Photograph Allegation—that the Daily News published an "unflattering, edited photograph" of her that it "intentionally altered and doctored, so as to disparage and diminish her appearance, inclusive but not limited to making her appear fatter, larger, uglier, blotchier, discolored, disproportionate and grotesque," Am. Compl. at ¶ 9—is absurd on its face, and the Daily News will, if necessary, demonstrate the allegation's falsity

on summary judgment.  But there is no need to allow Ms. LoMoro to proceed to summary

judgment based on the Unflattering Photograph Allegation, as pre-answer dismissal is warranted

with respect to it for two reasons.

> **1.   Ms. LoMoro does not plausibly allege that the published photograph was materially false.**

To prevail on her defamation claim based on the Unflattering Photograph

Allegation, Ms. LoMoro must plead and prove that the published photograph was "false." *G.D.*

*v. Kenny*, 15 A.3d 300, 310 (N.J. 2011).  Crucially, only *material* falsity can satisfy a defamation

plaintiff's falsity burden:  if publishing the precise alleged truth would not have "material[ly]

change[d]" the "gist" or "sting" of what the defendant actually published, then there can be no

claim.  *Masson v. New Yorker Magazine., Inc.*, 501 U.S. 496, 516-17 (1991).  Put differently, a

statement (or photograph) "is not considered false unless it would have a different effect on the

mind of the reader from that which the pleaded truth would have produced."  *Masson*, 501 U.S at

517 (internal quotation marks omitted).  This means that, to be "material" for defamation

purposes, an allegedly false statement (or photograph) must be inaccurate in a manner and extent

sufficient to cause the plaintiff greater "reputational harm" than the truth.  *Air Wisc. Airlines*

*Corp. v. Hoeper*, 134 S. Ct. 852, 863 (2014).

Here, Ms. LoMoro does not plausibly allege that the published photograph was

false in any material way, such that it would cause her "reputational harm" that a "true" picture

would not.  *See id.* at 863.  For example, Ms. LoMoro does not allege that the photograph falsely

portrayed her as a dancer at Satin Dolls (which she was) or that the photograph falsely depicted

her as happily posing for a Daily News photographer while at Satin Dolls, standing next to a

"Sopranos"-themed memorial, and wearing a short, skin-tight, low-cut dress (which she did).

And while Ms. LoMoro asserts that the published photograph made her look "ugl[y]" and

"grotesque," Am. Compl. at ¶¶ 9, 19C, it does no such thing, as the Court can see by looking at the photograph itself. *See Sourovelis v. City of Phila.*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017) ("[T]he Court need not accept as true allegations that are directly contradicted by indisputably authentic documents on which the complaint relies, or matters of public record."). At bottom, Ms. LoMoro remains unhappy that the Daily News published a photograph that, in her opinion, made her look less attractive than she actually was. Needless to say, such unhappiness does not give rise to a cause of action. Indeed, if it did, it would never be safe for a newspaper to publish a photograph of a person without obtaining that person's advance approval of the particular photograph to be published and granting the person veto power over the newspaper's selection if he or she deems the photograph unflattering.

### 2. Ms. LoMoro does not plausibly allege that the Daily News published the photograph with actual malice.

Like with the Criminality Allegation, Ms. LoMoro does not plausibly allege actual malice—that is, knowing falsehood or reckless disregard for the truth—as to the Unflattering Photograph Allegation. For starters, actual malice requires material falsity, which, as discussed above, Ms. LoMoro has not adequately alleged with respect to the Unflattering Photograph Allegation. *See Air Wisc.*, 134 S. Ct. at 861 ("[W]e have required more than mere falsity to establish actual malice: The falsity must be 'material.'" (quoting *Masson*, 501 U.S. at 517)). In addition, while Ms. LoMoro does plead that the Daily News "intentionally altered and doctored" the photograph so as "to disparage and diminish her appearance," Am. Comp. at ¶ 9, this allegation of knowing falsification is conclusory and therefore entitled to no presumption of truth even at the motion to dismiss stage. *See Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) ("[T]he presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face. Conclusory

-13-

assertions of fact . . . are not entitled to the same presumption." (citing *Iqbal*, 556 U.S. at 679)

(intentional quotation marks, citations, and brackets omitted)).  Ms. LoMoro pleads no "factual

content that allows the court to draw the reasonable inference" that the Daily News in fact

knowingly falsified the photograph.  *Iqbal*, 556 U.S. at 678.  To the contrary, it would defy

common sense for the Daily News to have done so.  After all, what possible reason would there

have been for the Daily News to have "doctored" the photograph as Ms. LoMoro conclusorily

claims?  What benefit could there have been to the Daily News in altering a photograph of a

woman who is never mentioned in the associated article so as to allegedly make her look "fatter"

and "uglier"?  Because the Amended Complaint contains no non-conclusory factual assertions

sufficient to render the "doctoring" allegation "plausible on [its] face," *Schuchardt*, 839 F.3d at

347, that allegation cannot satisfy Ms. LoMoro's actual malice pleading burden as to the

Unflattering Photograph Allegation.

     **C.**    **Ms. LoMoro's false light invasion of privacy claim should be dismissed for the same reasons as her defamation claim.**

     Ms. Lomoro's false light invasion of privacy claim fails with respect to the

Criminality Allegation for the same two independent reasons as her defamation claim:  (1) the

article did not state or imply that the she was involved in criminal activity in the first place; and

(2) she does not plausibly allege that the Daily News linked her to criminal conduct with actual.

*See Romaine*, 537 A.2d at 295 (explaining that, for false light claims, "[a]s with defamation

claims, it is for the court first to determine whether the criticized matter is capable of the

meaning assigned to it by plaintiff"); *Durando*, 37 A.2d at 458 (explaining that actual malice is

an element of any false light claim).  Similarly, Ms. LoMoro's false light invasion of privacy

claim fails with respect to the Unflattering Photograph Allegation for the same two independent

reasons as her defamation claim:  (1) she does not plausibly allege that the photograph was

materially false; and (2) she does not plausibly allege that the Daily News acted with actual malice in publishing the photograph that she thinks is unflattering.  *See G.D.*, 15 A.3d at 319 (explaining that false light's falsity element requires "a *major* misrepresentation of plaintiff's character, history activities, or beliefs" (emphasis added)); *Durando*, 37 A.2d at 458 (explaining that actual malice is an element of any false light claim).

## IV.    CONCLUSION

For all of these reasons, the Daily News requests that the Court dismiss Ms. LoMoro's Amended Complaint for failure to state a claim.  Further, because Ms. LoMoro has already amended her complaint once and because it would be impossible for her to correct all of the dispositive flaws identified above, the dismissal should be with prejudice.

Respectfully submitted,

Dated: December 21, 2018

/s/ Eli Segal
Eli Segal (PA 60234)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
Phone: 215.981.4239
Fax: 215.981.4750
segale@pepperlaw.com
*Counsel for Defendant Daily News, L.P.*

## CERTIFICATE OF SERVICE

I, Eli Segal, hereby certify that on December 21, 2018, the foregoing was filed electronically via ECF and thereby served on Plaintiff's counsel of record.

/s/ Eli Segal
Eli Segal

# EXHIBIT A

# RACK WHACK

## Famed 'Sopranos' jiggle joint is shuttered

New Jersey
SOPRANOS
Garden State

Strip club Satin Dolls in Lodi, N.J., which served as Tony Soprano's headquarters Bada Bing on HBO show, was shuttered because of its ties to real-life wiseguy.

NORMAN Y. LONO

**BY GRAHAM RAYMAN**
NEW YORK DAILY NEWS

THE NEW JERSEY strip club that was the model for the Bada Bing hangout in HBO's hit show "The Sopranos" served its last drink.

Satin Dolls in Lodi, N.J., was shuttered Sunday under a court order after New Jersey Attorney General Christopher Porrino and the Division of Alcohol Beverage Control moved against the club.

Actors playing Garden State mobsters regularly filmed at the Route 17 jiggle joint, and memorials to James Gandolfini – who played Tony Soprano – were erected there after the star's untimely death in 2013.

A.J.'s Gentleman Club, which has the same owners, was also shut down.

Both clubs have to either sell or transfer their liquor licenses by Jan. 3, Porrino said.

Anthony Cardinalle, a convicted racketeer from Saddle River, N.J., is barred from having a liquor license.

But authorities alleged he continued to run the clubs despite that. They also allege that a large amount of cash flowing in and out of the business was not accounted for.

Other members of the Cardinalle family tried to retain ownership of the licenses and continued to operate the businesses, Porrino alleged.

On Nov. 20, alcohol division Director David Rible signed the order barring Cardinalle's involvement with the club.

"The Cardinalles may have wanted to keep the business in the family, but that's not how it works. Their continued flouting of Alcoholic Beverage Control laws cannot and will not be tolerated," Porrino said in a statement.

"Illegal activity was glorified at the 'Bada Bing' in the fictional world of Tony Soprano, but it has no place in modern-day New Jersey. It's time to shut it down."

In May, the division charged the club with prostitution and lewd activity.

A 2011 consent order for Cardinalle's company, Route 17 Entertainment, said Luceen Cardinalle, who was listed as the owner, had to turn over the licenses to her daughter, Loren.

Satin Dolls
Home Of The Original
BADA BING!
Club
THANK YOU

The Cardinalles also had to pay $1.25 million in penalties.

"The Cardinalles, quite simply, have not played by the rules despite many opportunities to correct their behavior, and it's time to get them out of the alcohol business once and for all," Rible said.

In 1995, Anthony Cardinalle pleaded guilty to federal income tax evasion for not reporting cash payments from "gentleman's clubs" in which he held undisclosed interests.

In 2013, he was indicted by the feds for involvement in a waste-disposal company controlled by the Genovese crime family.

He pleaded guilty in December 2013 to racketeering conspiracy and conspiracy to commit extortion. He spent 30 days in jail and was ordered to pay a fine and restitution.

Lodi police claim that Anthony Cardinalle continued to be the contact person for the club.

When the cops came to the club on a burglary report, for instance, he was the club's representative.

# Falling debris from scaffold kills hardhat

A PIECE of metal fell off construction scaffolding that had been repeatedly cited for code violations and plummeted 10 stories Monday morning, fatally striking a worker, officials said.

Przemyskaw Krawczyk, 34, was standing on a sidewalk shed at the 61 Ninth Ave. construction site in Chelsea when an anchoring bracket hit him in the head. The site had been visited again and again by buildings inspectors since last summer and hit with multiple code violations, many of which stemmed from scaffolding issues, records show.

"This tragedy appears to have been completely preventable and we are taking enforcement actions against all parties involved," said Buildings Department spokesman Joseph Soldevere. The department shut down the site and expects to issue violations.

At Krawczyk's Ozone Park, Queens, home, his wife, who declined to give her name, said, "I cannot speak about this right now. I have children, thank you."

Police officers arrived at the scene at 8:40 a.m. and found Krawczyk sprawled on the ground, officials said. He suffered severe head trauma and was unresponsive. Medics rushed him to Lenox Hill Hospital, where he died an hour later.

**Laura Dimon, Greg B. Smith and Elizabeth Keogh**

# Truck mows down Qns. deliveryman

A TRACTOR-TRAILER slammed into a food deliveryman on a bicycle and killed him early Monday, police said.

The horrific crash took place at about 8 a.m. at the intersection of 54th Ave. and 48th St. in Maspeth, Queens.

Cops said the truck was going north on 48th St. and hit deliveryman Hugo Ramirez of Elmhurst as it turned right onto 54th Ave. about a block from an entrance ramp to the Long Island Expressway. Ramirez was also going north at the time.

Medics rushed the 23-year-old man to Elmhurst Hospital Center in critical condition. He died at the hospital.

The truck kept going and is being sought by police. Investigators said it's possible the truck driver didn't notice hitting anyone.

Cops were also reviewing security video which may have captured the crash.

**Graham Rayman**

# EXHIBIT B

*Since 1983*

**Simon Jeffrey Rosen**
**Attorney and Counsellor At Law**

January 2. 2018

DAILY NEWS, L.P.
4 New York Plaza
NY NY 10004
Attn: Business & Legal Affairs

TRONC, INC.
435 N. Michigan Ave.
Chicago IL 60611
Attn: Business & Legal Affairs

*Certified Mail-Return Recipt Requestedl/Time Sensitive*

RE: My client: Ms. Diana LoMoro
"RACK WHACK" – Published 12/19/17, p. 18

----------------------------------------------

FOR SETTLEMENT PURPOSES/WITHOUT PREJUDICE
PERSONAL AND CONFIDENTIAL

Dear Daily News and Tronc Legal Depts.:

Please be informed that this office represents Ms. Diana LoMoro, whose unauthorized likeness was exhibited in the NY Daily News in its December 19. 2017 issue, on Page 18, under the headline "RACK WHACK".   Your publication's unauthorized publishing and distribution of Ms. LoMoro's likeness was unlawful and violative of Ms. LoMoro's rights.   Specifically, your company possesses liability unto Ms. LoMoro pursuant to N.Y. Civ. Rights Law §§ 50-51.  A copy of the photograph is attached for your easy reference. Ms. LoMoro is the brunette on the left.

Under the statute, my client is entitled to damages, reasonable counsel fees and costs. She has sustained emotional injuries, including but not limited to humiliation, prolonged sadness (potentially depression) and embarrassment, as a direct result of the wrongful publication of her photograph, which under the law is compensable.   It was irresponsible for the NY Daily News to publish a photograph depicting Ms. LoMoro, who has had no affiliation with Satin Dolls in years.  The night club was closed due to its alleged ties with the mob, racketeering, prostitution and lewd acts, all of which Ms. LoMoro has never been involved therewith.

Accordingly, demand is respectfully made, without prejudice, upon Daily News, L.P. and its parent company, Tronc, Inc., for the following relief:

1. Compensatory damages for a mutually agreed upon, reasonable amount;

2. Publication on Page 18 of a future edition, in January 2018, of a different photograph of Ms. LoMoro, of like size and with like-size font headline, which photograph and headline to be chosen by Ms. LoMoro and approved by the Daily News (approval not to be unreasonably withheld). Under the photograph, the News shall print a short apology/explanation stating that Ms. LoMoro has not in any manner been affiliated whatsoever with Satin Dolls for several years, and has never been accused of being involved in racketeering, prostitution, lewd acts, or any other wrongdoing connected with Satin Dolls. There would be no re-publication of the errant 12/19/17 photograph and Daily News shall agree to no future re-publication of that photograph depiction of Ms. LoMoro's likeness; and,

3. Reimbursement of reasonable counsel fees of Three Thousand Dollars.

Kindly provide me with the courtesy of your reply, at your early convenience, and in any event not later than Friday, January 12, 2018. Thank you for your prompt attention to this matter.

Yours very truly,

Simon Rosen, Esq.

Sr/sst w/encl.
cc: Ms. LoMoro

# EXHIBIT C


MATTHEW A. LEISH
Assistant General Counsel
Phone: (212) 210-2144
Facsimile: (212) 643-7843
mleish@nydailynews.com

January 9, 2018

VIA CERTIFIED MAIL

Simon Rosen, Esq.
Law Office of Simon Rosen
2019 Walnut Street
Philadelphia, PA 19103

      Re:   Diana LoMoro

Dear Mr. Rosen:

      I write in response to your January 2, 2018 letter, in which you assert that the Daily News published a supposedly unauthorized image of your client, Diana LoMoro, in its December 19, 2017 issue, and that this publication somehow violated Ms. LoMoro's rights under §§50 and 51 of the New York Civil Rights Law. To the contrary, nothing about the Daily News' publication of the photograph in question violated Ms. LoMoro's rights in any way. Accordingly, the Daily News rejects your demands to pay her compensatory damages and attorneys' fees and to publish a different photograph of Ms. LoMoro along with an apology in a future edition of the paper.

      As a preliminary matter, your client willingly posed for the photograph in question in 2013, and your letter does not claim otherwise. The photograph – which depicts Ms. LoMoro and another individual posing at the Satin Dolls club with a photograph of James Gandolfini a/k/a Tony Soprano and a "Sopranos" license plate – is directly relevant to the subject matter of the article, namely the closing of Satin Dolls, which was immortalized in the Sopranos. I note that nothing in the article states or implies that Ms. LoMoro was involved in any of the illegal activity that led to the closure of the club.

      As for Sections 50 and 51 of the Civil Rights Law, those sections provide that "[a]ny person whose name, portrait, picture or voice" is used within New York "for advertising purposes or for the purposes of trade" without written consent can bring an action to enjoin such use and obtain civil damages. N.Y. Civ. R. Law §§50-51. However, New York courts have made it crystal clear that publishing a photograph in the context of a news article is not a use "for advertising purposes or for the purposes of trade" within the meaning of the statute. Finger v. Omni Publ'ns Int'l, Inc., 77 N.Y.2d 138, 141, 564 N.Y.S.2d 1014, 1016 (1990) (Section 51 "prohibit[s] the use of pictures, names or portraits 'for advertising purposes or for the purposes of trade' *only*, and nothing more . . . . [C]ourts have consistently refused to construe these terms

[advertising or trade] as encompassing publications concerning newsworthy events or matters of public interest"); Messenger v. Gruner + Jahr Printing & Publ'g, 94 N.Y.2d 436, 441, 706 N.Y.S.2d 52, 55 (2000) ("[T]hese sections do not apply to reports of newsworthy events or matters of public interest . . . because a newsworthy article is not deemed produced for the purposes of advertising or trade.") Newsworthiness and public interest (terms that are frequently used interchangeably by New York courts) are to be "broadly construed," Messenger, 94 N.Y.2d at 441, 706 N.Y.S.2d at 55, and have been "defined in the most liberal and far-reaching terms," including "all types of factual, educational and historical data, or even entertainment and amusement, concerning interesting phases of human activity in general," De Gregorio v. CBS, Inc., 123 Misc.2d 491, 493, 473 N.Y.S.2d 922, 924 (Sup. Ct. N.Y. Co. 1984).

Here, there can be no question that the December 19, 2017 article which accompanied the photograph is newsworthy under §§50 and 51. The article concerns a matter of indisputable public interest, namely the closing of a famous business. Such an article cannot be deemed published "for advertising purposes or for the purposes of trade," and §§50 and 51 simply do not apply. Accordingly, there is no basis for any claim by Ms. LoMoro under these provisions or otherwise.

Sincerely,

Matthew A. Leish